

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | 2:03-CR-047-J(19) |
| v. | § | 2:05-CV-0294 |
| | § | |
| OMAR MENDOZA | § | |

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Came for consideration defendant OMAR MENDOZA's Motion to Vacate, Set Aside or

Correct Sentence by a Person in Federal Custody. For the reasons hereinafter expressed, the

undersigned Magistrate Judge is of the opinion defendant is entitled to relief and recommends

the motion to vacate, set aside or correct sentence be GRANTED as to defendant's claim of

ineffective assistance of trial counsel.

I.
FACTS AND PROCEDURAL HISTORY

On April 29, 2003, defendant Mendoza was charged in two (2) counts of a seventeen-

count indictment. Mendoza was charged with conspiracy to possess with intent to distribute

methamphetamine (Count 1) and felon in possession of a firearm (Count 14). Defendant

Mendoza retained Mr. Dean Roper to represent him. On June 3, 2003, the government offered

defendant a plea bargain agreement which would have allowed Mendoza to plead guilty to the

felon in possession of a firearm count exposing him to a maximum penalty of imprisonment not

to exceed ten years. In exchange, the government would dismiss the conspiracy count. During

the time the plea offer was outstanding, defendant retained new counsel, Mr. Jose Silva.  The

plea offer was rejected after Mr. Silva was retained.  On July 9, 2003, newly retained counsel

(Mr. Silva) filed a motion to suppress evidence arguing there was no probable cause for the

search as the "affiant did not duly subscribe and affirm that probable cause existed nor state with

specificity the items to be found."  On July 11, 2003, after an evidentiary hearing, the trial judge

denied the motion to suppress, finding the police officers who sought and executed the search

warrant, and the judge who issued the warrant, met the standard of good faith, and that the

warrant was supported by probable cause.  On July 16, 2003, trial on the two (2) charges against

defendant Mendoza began and, on July 17, 2003, a jury found him guilty of both counts.

Defendant, on August 12, 2003, filed a notice of appeal challenging his conviction.[1]  On October

1, 2003, the District Judge sentenced defendant to a term of 310 months imprisonment and a 5-

year term of supervised release.

     In his appeal, defendant argued the district court's denial of the motion to suppress

evidence was in error, and that evidence was insufficient to allow the jury to conclude he had

participated in the drug conspiracy to possess with intent to distribute more than 500 grams of

methamphetamine.  On June 30, 2004, the Court of Appeals for the Fifth Circuit, finding the

district court did not err in concluding the good-faith exception applied in this case and that the

evidence was sufficient to allow a jury to find defendant participated in the conspiracy, affirmed

defendant's conviction and sentence.  *United States v. Mendoza*, No. 03-10819.  Defendant's

---

[1]Mr. Silva submitted a notice of appeal on defendant's behalf prior to final judgment being entered in this case. Consequently, the notice of appeal was treated as initiating an interlocutory appeal.  On October 9, 2003, Mr. Ray Taylor entered a notice of appearance as defendant Mendoza's counsel on appeal.  Unaware that Mr. Silva had filed a notice prior to judgment, Mr. Taylor also filed a notice of appeal together with the appellate filing fee which had not been submitted with the notice of appeal Mr. Silva had filed.  At the suggestion of the Fifth Circuit clerk, Mr. Taylor withdrew the second notice of appeal and transferred the filing fee to the first notice of appeal.

motion for reconsideration was denied August 24, 2004. Defendant did not seek further direct review of his conviction and sentence by filing a petition for certiorari with the United States Supreme Court.

On November 9, 2005, defendant, represented by new counsel, filed the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody currently under consideration. In the motion and accompanying memorandum, defendant raises the following grounds in support of his contention that his conviction and sentence were imposed in violation of the Constitution or laws of the United States:

1. Defendant's sentence violates due process because it was based on the false assumption that the sentencing guidelines were mandatory rather than merely a starting point for determining the appropriate sentence;

2. Defendant was denied effective assistance of counsel because trial counsel failed to:

   a. properly advise him to take the 10-year plea offer;

   b. properly litigate his suppression of evidence claim; and

   c. move for a sentence reduction based on defendant's minimal role in the offense.

3. Defendant was denied effective assistance of counsel on appeal because appellate counsel failed to raise, on direct appeal, the claim that the sentence imposed was higher than the sentence authorized by the jury verdict.

On September 5, 2006, the government filed its response to defendant's motion to vacate and, on September 8, 2006, filed a supplemental response which contained an affidavit of Mr. Silva, defendant's trial counsel. On October 3, 2006, defendant filed his reply to the government's response. On October 12 and 30, 2006, the Court conducted evidentiary hearings on defendant's allegations of ineffective assistance of counsel. On November 6, 2006 and November 14, 2006,

defendant and the Government, respectively, filed briefs addressing defendant's claims of ineffective assistance of counsel. On December 22, 2006, defendant filed a post-hearing brief and, on January 11, 2007, the Government filed its post-hearing brief. On January 12, 2007, defendant filed a reply to the Government's post-hearing brief.

## II.
## APPLICATION OF GUIDELINES

In his first ground, defendant argues his sentence violates due process because it was imposed on a false assumption by the Court that the sentencing guidelines were mandatory rather than advisory. In his original motion to vacate, defendant cited only *United States v. Booker*, 453 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), in support of this argument. Defendant notes *Booker* removed the portion of the federal statute making application of the guidelines mandatory, leaving only the portion of the statute requiring courts to "consider" the sentencing range established by the guidelines in determining an appropriate sentence. Defendant contends the trial court's mandatory application of the guidelines resulted in a sentence greater than necessary to ensure the objectives of the Sentencing Reform Act.

In his October 3, 2006 reply, defendant maintained he was not, per se, relying solely on *Booker*, rather, he was relying on a series of cases holding that a sentence based on materially false assumptions or invalid premises is null and void. Defendant maintains the trial court's wrongful assumption that the guidelines were mandatory interfered with his right to be sentenced in a manner consistent with informed and appropriate sentencing.

Defendant's judgment became final November 22, 2004 (90 days after his motion for reconsideration was denied on August 24, 2004 and upon the expiration of time in which to file a petition for certiorari). *See* Sup. Ct. R. 13. *Booker* was decided January 12, 2005, subsequent to

judgment in this cause becoming final, and is not retroactively applicable to cases on collateral review. *See United States v. Gentry*, 432 F.3d 600, 605 (5th Cir. 2005); *Padilla v. United States*, 416 F.3d 424 (5th Cir. 2005). Therefore, defendant's *Booker* claim is not cognizable in this 2255 motion. Defendant's claim that his sentence, assessed under the federal Sentencing Guidelines, is unconstitutional and should be vacated based upon *Booker,* is without merit and should be DENIED.

Defendant also claims his sentence is null and void because it was based on the "materially false assumption or invalid premise" that sentencing within the Guideline range was mandatory rather than the range merely being advisory. At the time defendant was sentenced and at the time defendant's judgment in this case became final, sentencing within the federal guideline range was mandatory. The undersigned does not find defendant's sentence, at the time it was entered, was based upon any "misinformation or misunderstanding that [was] materially untrue" or upon any "materially false assumption" or "on the basis of invalid premises." Defendant's first claim is without merit and should be DENIED.

III.
EFFECTIVENESS OF COUNSEL

In his second ground, defendant Mendoza alleges his trial counsel rendered him ineffective assistance, which violated his Sixth Amendment rights. To prevail on a claim that he was denied his constitutional right to the effective assistance of counsel, a defendant must satisfy two requirements. "First, he would have to show that his attorney's conduct fell below an objective standard of reasonableness. Second, he would have to demonstrate a reasonable probability that he was prejudiced by his attorney's unprofessional errors." *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989); *see also Strickland v. Washington*, 466 U.S. 668, 104

S.Ct. 2052, 80 L.Ed.2d 674 (1984). The question of whether a defendant has been subjected to ineffective assistance of counsel is a mixed question of fact and law. *United States v. Rusmisel*, 716 F.2d 301, 304 (5th Cir. 1983).

A showing that his attorney's conduct was deficient requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The performance inquiry must center on whether counsel's assistance was <u>reasonable</u>, considering all the circumstances at the time of counsel's conduct. *Id*. at 688-90. As for the issue of prejudice, defendant must do more than simply allege prejudice, he must "affirmatively prove" prejudice. *See Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir.), *cert. denied*, 476 U.S. 1143 (1986); *Strickland*, 466 U.S. at 693.

Relief should not be freely granted in a case such as this where a defendant who has gone to trial subsequently seeks to avoid the sentence assessed and obtain the benefit of a plea bargain agreement offered to him prior to trial. In fact, relief should rarely be granted. The principal reason for entering into a plea bargain is to avoid the uncertain outcome of trial. Human nature being what it is, if habeas relief were freely granted in circumstances such as the present one, no rational defendant would ever accept a plea bargain prior to trial. Instead he would try to obtain an acquittal at trial and if unsuccessful, retroactively seek the benefit of any plea bargain previously offered. Because of the "heads I win, tails you lose" quality of such a claim, habeas courts have been chary of granting relief in these circumstances. *Green v. Johnson*, 46 F. Supp. 2d 614 (N.D. Tex. 1999), *citing United States v. Day*, 969 F.2d 39, 46, n. 9 (3rd Cir. 1992).

This is not to say, however, that relief should never be granted. It does not appear there

is any Supreme Court authority addressing a claim such as the one presented here, *i.e.*, a case where a defendant pleads not guilty and asserts a claim of ineffective assistance relating to the plea decision. In addition to there being no Supreme Court authority addressing the particular type of claims presented here, there appears to be very little other federal authority addressing these particular type claims. There are, however, some federal courts which have addressed similar claims. In *United States v. Day*, 969 F.2d 39 (3rd Cir. 1992), the court addressed the claim of ineffective assistance of counsel regarding a defendant's decision not to accept a plea offer. Although the case was remanded to the district court for further factual development, the appellate court held the defendant's motion to vacate did raise a ground of relief based upon ineffective assistance of counsel due to the counsel's failure to advise the defendant of the impact of prior convictions on his potential sentence, depriving him of the effective assistance of counsel in deciding whether to accept a plea offer. The *Day* court cited *Strickland v. Washington*, *supra*, holding that in order for a defendant to gain relief he must not only show ineffective assistance, but must also show a reasonable probability that "but for" the ineffective assistance the result would have been different. The court noted defendant Day's claim that if he had been told of his true sentence exposure, he would have accepted the government's plea offer for a five year sentence rather than going to trial where he received an approximately twenty-two (22) year sentence. One issue which must be resolved in determining whether a defendant has alleged sufficient prejudice is whether he has shown he would have accepted the plea offer. The court noted that the defendant did not have to prove with absolute certainty he would have pleaded guilty, but would only have to show a "reasonable probability" such would have occurred.

In *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005), the court held for a defendant to obtain relief in a case involving a claim of ineffective assistance due to an allegation counsel incorrectly advised him to reject the government's plea offer, the defendant must not only establish ineffective assistance, but must also prove he was prejudiced by his attorney's substandard performance. The *Herrera* court held that to prove prejudice a defendant must show a reasonable probability the result of a proceeding would have been different. The Third Circuit has held that the decision to reject the plea offer and plead not guilty is a critical stage at which the right to effective assistance of counsel attaches. *United States ex rel. Dominick Caruso v. Zelinsky,* 689 F.2d 435, 438 (3rd Cir. 1982).

## A.  Failure to Advise

Defendant first contends he was denied the effective assistance of counsel at trial because counsel did not advise him (1) he should accept the plea offer limiting his sentence to a maximum of ten (10) years; (2) his suppression motion would fail if the officers and the issuing authority acted in good faith; or (3) if he stood trial and lost, the sentence would be three times the 10-year plea offer. Defendant maintains he was prejudiced by counsel's failure to properly advise him because if he had been presented with accurate information,[2] he would have accepted the plea offer instead of going to trial. Defendant argues the large disparity between the maximum 10-year sentence under the plea bargain and the 310-month sentence imposed after trial evidences the necessary prejudice and that counsel's failure to present the facts to defendant did not allow him to make an informed choice.

---

[2]In his October 3, 2006 reply, defendant clarifies that "if he had been made aware that he had a very small chance of prevailing on the suppression motion and had practically no chance of prevailing at trial, he would have accepted the 10-year plea."  Defendant asserts counsel "held out false hope that the evidence would be suppressed."

In an affidavit submitted with his motion to vacate, defendant Mendoza averred trial

counsel, Mr. Silva:

1.  Advised him the government had a weak case because the search warrant was not valid and assured defendant he could win a motion to suppress;

2.  Led defendant to believe that if he went to trial and lost, that his maximum sentence would be no greater than 10 years;

3.  Assured him that by filing a suppression motion, the government would not have a case, even though defendant had previously been told the prosecutor's 10-year offer was contingent upon defendant not filing a motion to suppress;

4.  Would not attempt to negotiate a plea deal, advised defendant to go to trial instead of negotiating a plea agreement, and forced defendant to go to trial against his wishes;

5.  Misled defendant because he convinced defendant the conspiracy charge would never hold up in court; and

6.  Failed to discuss the plea offer from the government before trial.

Mr. Silva, defendant's trial counsel, also submitted an affidavit which contradicted

Mendoza's affidavit on almost every point and wherein he averred he:

1.  Advised defendant of the risks of filing the Motion to Suppress;

2.  Explained to him that even if there was no probable cause for the warrant, the warrant would be upheld if the court found good faith on the part of the officers;

3.  Explained it was extremely difficult to show bad faith in such cases;

4.  Explained that if they filed the motion to suppress, the 10-year offer would be rescinded immediately;

5.  Advised defendant of the severe punishment he would receive if they lost the motion to suppress and defendant was convicted of the conspiracy charge;

6.  Advised defendant that the evidence against him in a trial situation would

be overwhelming and there was virtually no chance of acquittal;

7.     Did not withhold from defendant the fact that a favorable plea offer had been made; and

8.     Advised defendant his sentence without a plea offer would be three times as severe.

Mr. Silva further averred defendant, although being advised of the risks, made the decision to reject the plea offer and proceed with the motion to suppress. Counsel further stated defendant Mendoza made this decision with no encouragement from defense counsel.

The affidavits by defendant Mendoza and by Mr. Silva were not part of the official court record and, in a case such as the present one where the affidavits are contrary to each other, such affidavits are not competent evidence on the ultimate issue of ineffective assistance. Here, however, an evidentiary hearing was held with both defendant Mendoza and Mr. Silva testifying. The affidavits, therefore, are relevant, if for no other reason than for a comparison of them with the evidentiary hearing testimony of these individuals.

Defendant Mendoza's first counsel, Mr. Dean Roper, testified that after reviewing the evidence in this case, he believed it was unlikely evidence obtained as a result of the search of defendant's residence would be suppressed on the basis of a Fourth Amendment violation. Tr. 61. Mr. Roper also testified that based on the evidence, the discovery received, the defendant's criminal history, the facts of this case and the likelihood that co-defendants would testify at trial because of cooperation requirements made as a part of co-defendants' plea agreements, the odds were against Mendoza obtaining a favorable verdict at trial. Tr. 74. Mr. Roper testified he advised defendant of his opinions as well as his estimate that the defendant would receive a sentence in excess of 30 years if he went to trial and lost. Tr. 64; 65. Mr. Roper testified

defendant Mendoza, after having the advantages of the plea agreement, as well as his guideline sentence exposure, explained to him, was agreeable to resolving this case by entering a guilty plea and was interested in getting the best offer he could get from the government. Tr. 74. Mr. Roper testified he negotiated a favorable plea agreement for Mendoza that allowed him to plead to the felon in possession of a firearm count, capping defendant's sentence at ten years, in exchange for defendant providing information with regard to the drug conspiracy.[3] Tr. 61-62. Mr. Roper testified defendant was hesitant about being required to cooperate due to concerns for his family's safety. Tr. 63. As a result, the cooperation requirement was dropped from the written plea offer the government forwarded to Mr. Roper on June 3, 2006. Tr. 70. There was, however, an oral condition that the offer would be withdrawn if defendant filed a motion to suppress. Mr. Roper testified he advised defendant that if he accepted the plea offer, he would probably receive a 6-year sentence under the federal sentencing guidelines, and possibly a 5-year sentence if he cooperated on the federal drug conspiracy case. Tr. 64-65; 70. Mr. Roper testified he made it clear to Mendoza that it was his professional opinion that he should accept the plea offer, and also his opinion as to what the sentence would be if Mendoza were convicted after a trial. Tr. 68.

Mr. Roper further stated defendant Mendoza understood the advantage of accepting the offer, was convinced entering a plea was in his best interest, had expressed his willingness to accept the plea offer, was ready to accept the plea offer and, in fact, was on the verge of signing the plea agreement when he (Mendoza) met with another attorney, Mr. Jose Silva, without Mr. Roper's knowledge. Tr. 75. Mr. Roper testified he received Mr. Silva's motion to substitute

---

[3]Mr. Roper testified defendant providing information in a state murder case contributed to this 10-year offer. Tr. 71.

counsel in the mail, and that this was his very first contact with Mr. Silva, an El Paso, Texas attorney. Tr. 63, 76. Mr. Roper explained he immediately contacted defendant Mendoza and the defendant's mother who both denied hiring Mr. Silva. Tr. 76. Mr. Roper then contacted Mr. Silva, who admitted meeting with defendant Mendoza but would not identify who had hired him to meet with the defendant.[4] Tr. 67, 77. Mr. Roper requested Mr. Silva return to Amarillo and that he, Mr. Roper, and defendant Mendoza meet together to discuss the matter. Tr. 71.

On or about June 9, 2003, Mr. Silva met with Mr. Roper at Mr. Roper's office. Mr. Roper testified he told Mr. Silva, during this meeting, that defendant's case was not triable and that going to trial would be the biggest mistake Mendoza could make. Tr. 72, 77. Mr. Roper explained that Mendoza had already cooperated by providing information in a state murder case and that the government was not, as part of its plea offer, going to require defendant Mendoza to cooperate in the federal drug conspiracy case. Tr. 72. Mr. Roper testified he specifically told Mr. Silva what he thought would happen if the case were tried and that, in response to Mr. Roper's arguments, Mr. Silva replied, "Sometimes you've just got to let the client do what he wants to do." Tr. 78. Mr. Roper testified he replied to Mr. Silva that "sometimes our toughest job is to protect our clients from their own lack of knowledge and their own judgment" and that Mr. Silva's response was, "Well, I think if [defendant] wants to go to trial, that's what he needs to do."

After the meeting at Mr. Roper's office, Mr. Roper and Mr. Silva proceeded, in different vehicles, to the county jail to meet with defendant Mendoza. A letter from defendant Mendoza to Mr. Roper dated August 5, 2003 was admitted as an exhibit at the hearing. In that letter,

---

[4]Mr. Roper testified he suspected Mr. Silva was attempting to enter the case to protect various co-defendants rather than represent defendant's best interest. Tr. 77.

defendant Mendoza advised Mr. Roper that prior to the meeting between himself and the two attorneys, Mr. Silva had called him (Mendoza) from his cellular phone and advised him Mr. Roper was not looking after defendant's best interest, promised him he could get him out on bond, and could get a better plea offer without a requirement to cooperate. Tr. 79-80. In his letter, defendant also stated Mr. Silva had advised defendant what to say at the meeting between the three (3) of them.

Mr. Roper testified that at this meeting, he advised defendant Mendoza he was making a mistake by not accepting the plea agreement. Tr. 68. Mr. Roper advised defendant that certain co-defendants, who were defendant's only connection to the conspiracy, had negotiated pleas and that plea agreements usually required cooperation as a condition of the agreement, thus, it was likely they would testify at any trial. Tr. 69. He also advised he was reasonably certain that all the other co-defendants had entered plea agreements. Mr. Roper again told defendant Mendoza it was in his best interest to accept the plea offer and that he did not agree with Mr. Silva's approach to the case at all. Tr. 73. Nonetheless, defendant stated he would "go with" Mr. Silva. Mr. Roper then signed the motion to substitute Mr. Silva as counsel. Mr. Roper testified it was his belief that Mr. Silva's initial contact with defendant undermined defendant's decision to plead and that Mr. Silva was the reason defendant Mendoza did not sign the plea agreement. Tr. 67, 76.

Defendant Mendoza's testimony at the evidentiary hearing was that Mr. Roper related to him that the federal government had offered a plea in the federal case for 10 years. Defendant

Mendoza explained he believed this 10-year plea, and a bond,[5] were offered in exchange for him providing information regarding a state murder investigation rather than in exchange for providing information as to the federal drug conspiracy. Defendant stated he was subsequently angry with Mr. Roper because he did not, in fact, receive a bond in the federal case for the information he provided to the state. Defendant also testified Mr. Roper indicated he could possibly get defendant a 5-year plea offer if defendant would cooperate by providing information with regard to the federal drug conspiracy case, but that defendant refused to provide information. Defendant acknowledged Mr. Roper later told him he could take the 10-year plea offer without providing information on the drug conspiracy.

Defendant Mendoza testified that when he first contacted Mr. Silva, who subsequently became his trial counsel, Mr. Silva advised him the search was not valid and that the government had a weak case. Defendant testified he retained Mr. Silva because Mr. Silva told him he could get defendant "a better plea, a better deal, and a bond" without providing information on the drug conspiracy, and because Mr. Roper kept pressuring defendant to cooperate with regard to the drug conspiracy and did not get him a bond.

Defendant Mendoza testified that after retaining Mr. Silva, Mr. Silva did not recommend that he take the government's 10-year plea offer and, in fact, did not give him any advice at all about whether he should take the offer. Defendant testified Mr. Silva advised he would file a motion to suppress the evidence seized as a result of the invalid search and that after it was granted, the government would not have a case against defendant. Mendoza further stated Mr.

---

[5]Mr. Roper testified the government would not agree to recommend defendant be released on bond due to concerns for defendant's safety and because of defendant's criminal history. Tr. 66. Mr. Roper testified he told defendant the Court was unlikely to release defendant on bond without a recommendation from the government. Mr. Roper acknowledged being released on bond was an important issue for defendant.

Silva did not advise him of any downside to filing the suppression motion, did not advise him he could be subject to more than ten years if he went to trial, did not attempt to negotiate another plea agreement, and advised the government could not connect him to the full amount of drugs if his case went to trial. Defendant testified that if Mr. Silva had told him the government had a strong case against him, that he would receive a sentence of much more than ten years if convicted after trial, and that his advice was to take the plea offer, defendant would have taken the 10-year plea offer.

Mr. Silva also testified at the evidentiary hearing. Mr. Silva acknowledged the plea offer from the government was conditioned on a motion to suppress the search not being filed. Tr. 32. Mr. Silva testified he believed the search warrant was defective because it was based upon an affidavit that was less than "bare bones," and that a motion to suppress was "defensible." He stated he was also of the opinion the government's case against Mendoza was weak because the only evidence the government had against defendant, at the time, to prove a conspiracy to distribute methamphetamine was large amounts of cash, ledger books, a gun, and a trace of methamphetamine. Mr. Silva acknowledged he told defendant Mendoza his case was "defensible" and a motion to suppress was "defensible" after reviewing only the search warrant, police reports, and the arrest report. Mr. Silva acknowledged he never advised defendant his best course of action was to accept the plea offer. Tr. 39-40, 43.

Mr. Silva testified he told Mendoza that if a motion to suppress was unsuccessful and defendant was convicted after trial, his sentencing guidelines could be 15 -20 years, but that it was his estimate that the guideline range would not be "much beyond ten years, fifteen."[6] Tr. 19,

---

[6]In his affidavit, Mr. Silva stated he advised defendant he was facing a sentence 3 times as severe as the 10-year plea offer if convicted after trial.

41. Mr. Silva also testified he never gave defendant his professional opinion as to whether defendant should accept or reject the plea offer. Tr. 39-40.

Neither defendant Mendoza's nor Mr. Silva's testimony at the evidentiary hearing was entirely consistent with their affidavits. Defendant Mendoza's testimony, however, was more consistent than Mr. Silva's. Mr. Silva's testimony differed from his affidavit on several key issues.

Mr. Silva's affidavit recites the search of Mendoza's home was the principal basis for the indictment. The indictment involved twenty-two (22) defendants, and involved a conspiracy to distribute methamphetamine over approximately three years. The basis of the indictment was not primarily the search of defendant Mendoza's residence.

Mr. Silva's affidavit also states he was aware that if the defendant proceeded with the motion to suppress and lost and was convicted, his sentence would be approximately 25-30 years, and that he advised defendant Mendoza of the risk of filing the motion to suppress, and that even if there was no probable cause for the warrant, it would be upheld if the court found good faith on the part of the officers. Mr. Silva states he explained it was extremely difficult to show bad faith and that if the motion to suppress was filed, the ten-year plea offer would be rescinded. At the evidentiary hearing, however, Mr. Silva's testimony conflicted. He testified at one point that he advised Mendoza's potential sentence if convicted at trial would be 10-15 years and at another point he stated he advised him the potential sentence would be 15-20 years.

Mr. Silva's affidavit states defendant Mendoza was advised the evidence against him at trial would be overwhelming and there was no virtually no chance of acquittal. Mr. Silva then states that he advised Mendoza that his sentence without a plea offer would be three times as

severe. Mr. Silva's testimony at the evidentiary hearing differed. At the evidentiary hearing, Mr. Silva stated that he felt like the case was defensible, and that the motion to suppress was defensible.

Finally, Mr. Silva, in his affidavit, states his challenge to the search and the search warrant was that the affidavit presented to the state court judge was insufficient to establish probable cause and, therefore, the police never should have been in Mendoza's home. He does not address in his affidavit the good faith exception other than to state he never admitted the officers acted in good faith with regard to the probable cause.

There is one part of Mr. Silva's testimony which is particularly relevant. When questioned regarding a potential six (6) year sentence (Mr. Roper's guideline calculation on the firearm count), Mr. Silva stated he "would have jumped all over 6 years." This statement clearly shows the inconsistency in Mr. Silva's testimony as to his evaluation of the case and whether it was triable or not, as well as showing he did not have a command of the facts of this case.

Consequently, the undersigned finds Mr. Silva's testimony at the hearing to be less than credible. Whether the deficiencies in Mr. Silva's testimony are due to an inability to remember critical facts of his representation of Omar Mendoza or whether these deficiencies are due to a more serious misstatement of the facts, Mr. Silva's presentation is not reliable and is unpersuasive.

The evidence before the Court is that defendant Mendoza was initially advised he could enter a plea of guilty to the felon in possession of a firearm offense and limit his sentence exposure to ten (10) years if he provided information with regard to the federal drug conspiracy case. Mr. Roper was able to get the plea offer modified to allow Mendoza to plead guilty to the

firearm possession count without any condition of providing information with regard to the federal drug conspiracy.

Defendant was advised by Mr. Roper, his first retained counsel, that even if there was a Fourth Amendment violation, it was unlikely the evidence obtained as a result of the search of defendant's residence would be suppressed. Mr. Silva, prior to and after being retained by defendant, advised defendant the search of his residence was unconstitutional and that a motion to suppress was "defensible." Mr. Silva did not discuss with the defendant the good faith exception to an unconstitutional search which would make suppression of the evidence unlikely.

Mr. Roper advised Mendoza he was unlikely to prevail in a trial because co-defendants in the case had or were going to enter guilty pleas and would, in all probability, provide testimony, and that if convicted, defendant's sentence would most likely be in excess of 30 years. Mr. Silva advised defendant his case was "defensible," that the government's case was weak, and that if a motion to suppress was unsuccessful and defendant was convicted after trial, his sentence would most likely be 10 or 15 years.[7] Mr. Roper specifically advised Mendoza that, in his professional opinion, Mendoza should accept the government's plea offer based on the all the circumstances of the case. Mr. Silva did not advise defendant whether he should or should not accept the plea, nor did he advise defendant of his professional opinion of the best course of action. More importantly, whether he made any recommendation to plead guilty or not, Mr. Silva did not provide defendant Mendoza with a competent legal analysis of the strengths and weaknesses of

---

[7]Mr. Silva testified at the evidentiary hearing that he advised defendant Mendoza that, based on a criminal history score of 2, and the fact that defendant had a firearm by the bed, that his sentence would be 15-20 years. *Evidentiary Hearing Transcript*, at 19. At the hearing, Mr. Silva subsequently testified that based on the guidelines, he did not think defendant Mendoza's sentence would be much beyond 10-15 years. *Id*. at 41. In his affidavit in response to defendant's motion to vacate, Mr. Silva averred he was aware that if defendant went to trial, his sentence would be approximately 25-30 years. *Motion to Supplement Response in Opposition to Motion Under 28 U.S.C. § 2255*, Government Exhibit A, at 2.

the case so that Mendoza could make an informed decision to accept or reject the plea offer.

Defendant Mendoza's decision to reject the plea offer and attempt to suppress the evidence was based on the ineffective advice from trial counsel Mr. Silva or, at the very least, was based upon a lack of advice and/or information. But for Mr. Silva's involvement Mendoza would have pled guilty. Specifically, Mr. Silva advised defendant the motion to suppress was "defensible," even though the good faith exception would, in all probability, cause the motion to be denied. It further appears Mr. Silva rendered his opinion to the defendant that even if they went to trial, the government's case was weak and defendant's case was "defensible" because the government, based only on the items found during the search of his residence, could not link defendant to any drugs distributed by the conspiracy. Mr. Silva overlooked the fact that co-defendants were entering pleas and, as a result, most likely would testify in any trial as a result of their plea agreements. Mr. Silva's testimony does not reflect that he investigated that possibility by inquiry to the prosecutor or to counsel representing the co-defendants. Further, Mr. Silva's estimate as to defendant's possible sentence if he was, in fact, convicted after a trial was 10-15 years. This advice was not reasonable under the facts and circumstances of this case.

The right to effective assistance of counsel includes the right to reasonably competent professional advice from counsel when making the decision to accept or reject a plea offer. *See Colson v. Smith*, 438 F.2d 1076, 1078-80 (5th Cir. 1971). The role of counsel in the process of deciding how to plead is a significant one. *Id*. Here, Mr. Silva did not substantially assist the defendant in deciding whether to plead guilty. Mr. Silva did not provide defendant with a realistic picture of the facts or an understanding of the law in relation to the facts. He did not permit defendant to make an informed and conscious choice whether to accept the plea or take the substantial risk of seeking suppression of evidence from the search and proceeding to trial if

suppression failed.

This is not to say an attorney's advice must be perfect.  Advice need not be perfect, but it must be reasonably competent.  Here, Mr. Silva's performance was objectively deficient.  Mr. Silva held out false hope and caused defendant Mendoza to reject previous counsel's advice.  Mr. Silva's advice denied defendant the opportunity to make a well-informed and reasonable decision whether to accept the government's plea offer.  Mr. Silva's performance was deficient in failing to give defendant his professional advice concerning his opinion of whether to accept or reject the plea offer, and in failing to conduct a reasonable pre-trial investigation prior to advising defendant as to the possible outcome of his case if he did not accept the plea offer.  Mr. Roper testified defendant was willing to accept the 10-year plea offer prior to consulting with Mr. Silva.  Defendant testified he would have accepted the 10-year plea offer if he had been accurately advised of the benefits of the plea, the likelihood of success of a suppression motion, and the dire consequences and sentence exposure of not accepting the plea and proceeding to trial.  Mr. Silva's advice, or lack of advice, fell "outside the wide range of professionally competent assistance."  The undersigned finds defendant was denied his Sixth Amendment right to the effective assistance of counsel at trial.

## B. Prejudice

Since defendant Mendoza rejected a plea agreement which arguably could have resulted in a sentence of approximately six years and, instead, chose to go to trial and received a sentence of twenty-five years (310 months), an additional sentence of approximately nineteen years, prejudice would seem to have been established.  The Court, however, must consider whether Mendoza was truly prejudiced, *i.e.*, if he would have, in fact, accepted the plea bargain and pled

guilty but for Mr. Silva's representation of him and statements to him. Mendoza, of course, has testified he would have accepted the plea agreement and pled guilty if he had known the good faith exception would result in a denial of the motion to suppress and if he had known his chances at trial were very poor. The government has argued Mendoza cannot complain that Mr. Silva was ineffective when he failed to give Mendoza the very advice Mendoza had already received from Mr. Roper. The government presents a good argument. It is undisputed defendant Mendoza, from Mr. Roper, received effective representation regarding his options as to whether to plead guilty or proceed to trial. Mendoza rejected that advice, discharged Mr. Roper and hired Mr. Silva. If the facts were different, and if the case against Mendoza had been closer, or if Mr. Silva had properly advised defendant Mendoza of the minimal chances of success on both the motion to suppress and of going to trial, and defendant Mendoza, as some criminal defendants do, simply did not want to plead guilty under any circumstances, then defendant Mendoza would not have been prejudiced. Those are not the facts of this case and what appears to be a compelling argument for the government is actually the opposite. Defendant Mendoza was receiving effective representation from Mr. Roper. Defendant Mendoza had agreed to accept the plea bargain. It was because of Mr. Silva's entry that Mendoza reversed his decision. Not only did Mr. Silva enter the scene, Mr. Silva interfered with Mr. Roper's representation of Mendoza and undermined the advice Mr. Roper had given. The Court does not recall any inquiry about defendant Mendoza's educational background during the evidentiary hearing. However, based upon his testimony, Mendoza is not a sophisticated individual. Mendoza, like most criminal defendants, relied heavily upon his lawyer in dealing with the criminal justice system. The fact that defendant Mendoza chose to be represented by an attorney, duly licensed to practice law, and as to whom defendant Mendoza would have no reason to question his competence level is

not a fact which should deprive Mendoza of relief. The phrase "a drowning man will clutch at a straw" is applicable. Mendoza's testimony that he would have accepted the plea bargain is credible and he has shown prejudice.

## C. Litigation of Suppression Issues

Mr. Silva filed a motion to suppress evidence found in a search of defendant's residence on the basis that the search warrant affidavit failed to establish probable cause. The District Judge held a hearing on the motion to suppress. After the conclusion of testimony at the suppression hearing, Mr. Silva stated, in closing argument, "I don't believe good faith is the issue . . . the officers, of course, acted in good faith, and the Judge acted in good faith. I don't believe that's the issue at all." (Suppression Hearing Tr. 34). The trial court denied the motion to suppress, and entered an order finding the evidence seized should not be suppress based upon the good faith exception. The Court further found the warrant to be based upon probable cause.

In his motion to vacate, defendant argues defense counsel's concession that the officers and the judge who signed the warrant acted in good faith was a concession that an exception to the suppression of evidence existed and, therefore, was an admission the evidence should not be suppressed.[8] Defendant maintains this concession amounted to conduct below an objective standard of reasonableness. Defendant contends there was a reasonable probability he was prejudiced by defense counsel's concession of good faith because if he had been informed the evidence would not be suppressed based on the good faith exception, he would have accepted the government's plea offer of 10 years instead of pursuing the suppression motion. Defendant

---

[8] Under the good faith exception to the exclusionary rule, the evidence need not be suppressed when the police obtain the evidence through objective good faith reliance on a facially valid warrant later found to lack probable cause. *United States v. Leon*, 468 U.S. 897, 920 (1984).

concludes he was denied effective assistance of counsel.

In the affidavit submitted by Mr. Silva, he stated he:

1. Never admitted that the officers acted in good faith with regard to the probable cause that led to the search warrant and entering the residence; and

2. That the gravamen of his legal argument was that there was not enough evidence presented to the judicial officer to establish probable cause for the search warrant and, therefore, the officers never should have been in defendant's home in the first place.

The testimony at the suppression hearing established that despite the perceived lack of success of the warrant,[9] the police officers requesting the warrant and submitting the supporting affidavit, as well as the judicial officer signing the search warrant, acted in good faith. "An officer may rely in good faith on the validity of a warrant so long as the warrant is supported by more than a 'bare bones affidavit.' " *United States v. Cisneros,* 112 F.3d 1272, 1278 (5th Cir.1997) (quoting *United States v. Alix,* 86 F.3d 429, 435 (5th Cir.1996)). The warrant was not based on a "bare bones" affidavit because it contained sufficient detailed information as to the location to be searched, the items expected to be found and the basis for probable cause. As evidenced by the Court's written order denying defendant's motion to suppress, the motion was denied based on the substance of the evidence itself establishing the good faith exception. ("[T]he Court has examined the affidavit and all documents in connection with this case and concludes that the officers met the standard of good faith." *Order*, July 11, 2003, at 2.). Moreover, the Court further concluded even without the application of the good faith exception there was probable cause to search defendant's residence.

Assuming, for purposes of argument, that counsel may have had an argument that the

---

[9]Testimony established that only three (3) of the 32 items listed in the affidavit supporting the search warrant were found at the address which was the subject of the warrant, *i.e.*, one bank deposit slip, one blue notebook/ledger, and one firearm.

affidavit was lacking probable cause, there has been nothing presented by Mr. Silva, in his testimony or otherwise, as to how or why he felt he would be able to overcome the good faith exception.  In his testimony at the evidentiary hearing, Mr. Silva never provided any details or advised what his legal theory was to defeat the "good faith exception."  He did not cite any authority he considered applicable on the issue of good faith.  In fact, based upon his testimony at the hearing before the undersigned, Mr. Silva's analysis of no probable cause was more in the nature of a pre-*Leon* argument.  (*See* n. 7).  It is not unreasonable to expect counsel to be able to provide a cogent statement of his basis for believing the motion to suppress had arguable merit in a case where, as here, the plea bargain offer would be withdrawn if the motion were filed.  Absent a reasonable explanation, the undersigned has no choice but to find counsel's performance in pursuing the motion to suppress under the circumstances of this case was deficient.

### D.  Reduction of Sentence for Minimal Role

Defendant next argues trial counsel was ineffective at sentencing for failing to move for a reduction in defendant's base offense level under USSG § 3B1.2(b) for his role in the conspiracy as a minor participant.  In his reply brief, defendant argues the government's allegations regarding defendant's participation in the conspiracy, as well as the trial record itself, establishes defendant Mendoza  was merely "one of several people who purchased methamphetamine" from a large criminal organization.  Defendant argues if the criminal organization was as large as the government alleged, then it follows that defendant was only a minor participant.  Defendant argues that if the proper argument had been made, there is a reasonable likelihood he would have been granted a 2-point reduction for a minor role in the conspiracy and his sentence would have

been lower than the 310 months' imprisonment he received.

A narcotics ledger book and a large amount of cash were found during the search of defendant's house.  Evidence presented at trial showed defendant Mendoza had purchased at least 40 pounds of methamphetamine from co-defendants, amounts which are substantial distribution level quantities.  At the evidentiary hearing, Mr. Silva testified as to his knowledge of these facts.  Although Mr. Silva also acknowledged defendant was not a leader or organizer of the conspiracy, such does not mean defendant Mendoza qualified to be treated as a minor participant.  Defendant has failed to demonstrate he would have received any reduction as a minor participant if such a motion had been made.  Without demonstrating it was likely he would have been granted the 2-point reduction, defendant Mendoza has not shown he was prejudiced by the failure to make such a motion.

## E. Failure to Raise Ground on Appeal

In his final claim, defendant argues appellate counsel was ineffective for failing to raise on appeal a claim that the sentence imposed was higher than the sentence authorized by the jury verdict.  Citing *United States v. Collins*, 415 F.3d 304 (4th Cir. 2005) in his reply brief, defendant argues that, under *Apprendi*, the jury must determine the drug quantity attributable to each charged conspirator, not merely the amount distributed by the entire conspiracy.  Defendant notes the jury was not required to make a determination regarding the drug quantity distributed by each defendant and that absent such a determination, the sentence for the drug conspiracy is higher than authorized by the jury verdict.  Defendant contends that if this claim had been raised on appeal, it would have resulted in a remand for resentencing and a reduction of the sentence, and that appellate counsel was ineffective for failing to present this argument.

In a November 6, 2006 memorandum clarifying this claim, defendant states his ineffective assistance of appellate counsel argument is not based on *Blakely* or *Booker*, arguing such eliminates any issues involving retroactivity.[10]  Defendant explains his claim, instead, is based on a combination of the *Apprendi* decision (published three years before imposition of his sentence) and *Pinkerton v. United States*, 328 U.S. 640 (1946), which held actions of co-conspirators could not be attributed to a defendant unless they were in furtherance of jointly undertaken activity and foreseeable.

Defendant argues the jury was only required to make a finding that the entire conspiracy involved more than 500 grams of a mixture or substance containing methamphetamine[11] and that the jury was not called upon to make a specific finding that (1) defendant Mendoza himself was responsible for more than 500 grams, or (2) that the actions of the co-conspirators involving more than 500 grams was within the scope of defendant's conspiratorial agreement and was foreseeable to defendant.  Citing *United States v. Collins*, 415 F.3d 304 (4th Cir. 2005) as illustrative, defendant argues that, under *Apprendi* and *Pinkerton*, the jury must determine the drug amount attributable to each charged conspirator, not merely the amount distributed by the entire conspiracy.  Defendant argues that absent such a finding, the jury's verdict was a conviction for a conspiracy involving an unspecified quantity of methamphetamine which carries a statutory maximum penalty of twenty (20) years in prison, and that the sentence of 310 months

---

[10]If defendant were attempting to argue counsel was ineffective for failing to raise a claim on appeal under *Booker* and/or *Blakely v. Washington*, 542 U.S. 296 (2004), defendant's argument would fail.  Defendant's conviction was affirmed June 30, 2004, prior to the decision in *Booker* and one week after *Blakely* was decided.  Although defendant's conviction and sentence was affirmed after *Blakely*, the Fifth Circuit, only three (3) weeks after issuing *Blakely*, held *Blakely* did not apply to the federal sentencing guidelines.  *United States v. Pineiro*, 377 F.3d 464 (5th Cir. 2004).  Appellate counsel had no basis on which to raise an issue under *Blakely*, and appellate counsel would not be deficient for failing to raise a non-recognizable issue.

[11]Defendant cites to the trial court's charge which required the jury to find "that the overall scope of the conspiracy involved at least 500 grams of a mixture or substance containing a detectable amount of methamphetamine." Tr. 485.  Trial counsel objected to the charge on the basis that the jury should instead "determine exactly who had what." Trial counsel's objection was overruled.

is an illegal sentence.  Defendant concludes appellate counsel was ineffective or failing to present this meritorious argument, had no strategic reason for not pursuing the argument on appeal, and that if an *Apprendi/Pinkerton* claim had been raised, as exemplified by the *Collins* case, there was a reasonable probability the Fifth Circuit would have reversed defendant's sentence.

In an affidavit submitted by appellate counsel and attached to defendant's October 3, 2006 reply brief, appellate counsel averred that, "[a]t the time of the appeal . . . a challenge to the constitutionality of a <u>state</u> guideline system had been upheld by the Supreme Court."  Appellate counsel, although mentioning a possible guideline issue to defendant in correspondence, did not feel any guideline issues had been preserved by trial counsel or would be beneficial to raise on appeal.  Appellate counsel further averred:

> I would have predicted the *Booker* case would go the other way. [Defendant's] sentence was within the guidelines, and I knew of no basis for a downward departure, <u>under the law as it was then</u>.  At the time of the preparation of this appeal, I believed there was no sentencing issue to be raised, nor do I recall trial counsel raising an issue to preserve the error.

Appellate counsel filed defendant's appellate brief on February 10, 2004.  The state of the law in the Fifth Circuit at that time was that there was no *Apprendi* issue if the defendant's sentence did not exceed the statutory maximum.  The range of punishment for defendant's conspiracy offense was not less than ten years or more than life imprisonment.  The specific amount of methamphetamine required for a 10-year to life sentence was the amount set out in the indictment, and the jury was required to find the 500 grams or more amount to convict.  Defendant Mendoza was judicially advised he faced a maximum penalty of life in prison.  Defendant was sentenced to 310 months, well under the statutory maximum of life imprisonment.  Defendant's sentence was not higher than the sentence authorized by the jury

verdict.

The appellate court opinion in defendant's case issued June 30, 2004, one year prior to the Fourth Circuit *Collins* case.  Based on the state of Fifth Circuit law at the time of defendant's appeal, it would have been futile to raise an *Apprendi* issue.  *Cf. United States v. McIntosh*, 280 F. 3d 479, 484 (5th Cir. 2002); *United States v. Doggett*, 230 F.3d 160, 166 (5th Cir. 2000); *United States v. Meshack*, 225 F.3d 556, 578 (5th Cir. 2000).  Appellate counsel's decision to forego an *Apprendi* challenge was not deficient.  There was no authority in this circuit that would have supported an *Apprendi* challenge.  Although the Fourth Circuit *Collins* case appears indistinguishable from this case, *Collins* was not issued until after defendant's appeal was over and it is not binding precedent in this circuit.  The undersigned cannot find appellate counsel was ineffective, *i.e.*, made errors so serious that counsel was not functioning as counsel guaranteed by the Sixth Amendment, for failing to raise a meritless ground of error on appeal or for failing to anticipate subsequent developments in the law.  Defendant's third ground should be denied.[12]

## IV.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that motion to vacate sentence filed by defendant OMAR MENDOZA be GRANTED based upon ineffective assistance of trial counsel.  It is the further RECOMMENDATION of the undersigned Magistrate Judge that defendant Mendoza be allowed to accept the plea agreement offer extended to him prior to his having retained Mr. Jose Silva as his counsel.

---

[12]In his Post-Hearing Memorandum, defendant withdrew this claim of ineffective assistance of appellate counsel stating, "*United States v. Turner*, 319 F.3d 716 (5th Cir. 2003) appears to be in hopeless conflict with *United States v. Collins*, 415 F.3d 304 (4th Cir. 2005) where the Fourth Circuit held that, under *Apprendi* and *Pinkerton*, the jury must determine the drug quantity attributable to each charged conspirator, not merely the amount distributed by the entire conspiracy."

V.

## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 13th day of March 2009.


CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendations within eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Consequently, any objections shall be filed with the Court **on or before March 24, 2009**.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).